# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK RICHARD PARKER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES PROBATION OFFICER MIMI MANZANO, et al.,<br><br>Defendants. | Case No.: 3:22-cv-00001-RBM-NLS<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS**<br><br>**[Doc. 14]** |

Presently before the Court is a motion to dismiss ("Motion") filed by Defendants Mimi Manzano, Christopher J. Marco, and Ymelda Valenzuela ("Defendants"). (Doc. 14 ("MTD").) Plaintiff Derek Richard Parker ("Plaintiff"), appearing pro se, filed a response in opposition to the Motion (Doc. 15), and Defendants filed a reply (Doc. 16). The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). (Doc. 20.) For the reasons discussed below, Defendants' Motion is **GRANTED**.

## I. BACKGROUND

For purposes of ruling on the instant Motion, the Court assumes the following facts as alleged in the Complaint are true:

Plaintiff is a resident of Oceanside, California in San Diego County. Plaintiff alleges

he was notified on May 21, 2020 that his father, Richard Wayne Parker, would be released from federal prison. Plaintiff planned to have Richard Parker live with him in Oceanside upon his release. Although the exact chronology of events as alleged in the Complaint is unclear, it appears that a probation officer from the Central District of California contacted Plaintiff regarding the terms of Richard Parker's supervised release and the "security of the firearms released to [Plaintiff] by the trial judge" during the course of Richard Parker's criminal case. (*See* Doc. 1 ("Compl.") at 5.) Plaintiff alleges the Central District of California probation officer told Plaintiff "that having the firearms in a secure safe in a secured closet was adequate." (*Id*.)

A probation officer from the Southern District of California, Mimi Manzano, was subsequently assigned to Richard Parker's case to oversee his supervised release. Manzano informed Plaintiff that Plaintiff could not house firearms in his residence during the period of Richard Parker's supervised release, regardless of whether the firearms were kept in a locked safe. Plaintiff informed Manzano that he planned to move the subject firearms to a friend's house. Manzano asked for the names and addresses of the friends who would house the firearms, along with a list of which firearms would be kept at each location. Plaintiff alleges "[r]emoval of the firearms [from Plaintiff's home] would end any need to know by [Manzano]," but Manzano continued to seek the information. (*Id*.)

Plaintiff asked to speak with Manzano's supervisor, United States Probation Supervisory Officer Ymelda Valenzuela, who informed Plaintiff via email and telephone that Manzano was entitled to the names and addresses of the friends who would house the firearms. Plaintiff subsequently informed Manzano that he would place the firearms in a storage facility. Manzano informed Plaintiff that he must provide a copy of the storage facility contract and the address of the storage facility. Plaintiff placed the firearms in a storage facility and provided "under duress" a copy of the storage facility contract to Manzano.

Because Plaintiff believed the firearm policy was "non-existent," he requested from Defendants the firearm policies and procedures under the Freedom of Information Act

("FOIA"). United States Probation Supervisory Officer Christopher J. Marco told Plaintiff "the documents would not be provided, claiming a blanket exemption to the FOIA for the United States Probation Office." (*Id*. at 6.)[1]

The firearms at issue were stolen from Plaintiff's rented storage facility. Plaintiff states the only people aware that the firearms were being kept in the storage facility were Plaintiff, the storage facility manager, and Manzano, although Valenzuela and Marco "may possibly have possessed the information." (*Id*.)

Plaintiff filed the instant lawsuit on January 3, 2022, alleging Defendants Manzano, Valenzuela, and Marco violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and seeking a remedy under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). (*Id*. at 1.) More specifically, Plaintiff alleges "he was subjected to violation of his Fourth Amendment rights when he was forced to reveal personal and confidential information concerning his personal property by the Defendants under color of authority citing false legal federal policy and procedures." (*Id*. at 2–3.) Plaintiff also alleges "he was singled out for special actions contrary to law and his civil rights under the Fourteenth Amendment of the Constitution." (*Id*. at 3.) Among other relief, Plaintiff seeks $150,000 "from each Defendant in their official capacity," and $150,000 from each Defendant "in their personal/individual capacity." (*Id*. at 8.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). At the motion to dismiss stage, all material factual allegations in the complaint are accepted as true and are construed in the light most favorable to the non-

---

[1] Plaintiff states he previously sued the same Defendants in a separate lawsuit alleging violations under the Freedom of Information Act. *See Parker v. United States Probation Office et al.*, Case No. 3:21-cv-01373-DMS-DEB (S.D. Cal. 2021). Plaintiff states that lawsuit was dismissed for lack of jurisdiction. (Compl. at 5.)

1  moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "A
2  complaint should not be dismissed unless a plaintiff can prove no set of facts in support of
3  his claim which would entitle him to relief." *Id*. (citation omitted).

4        To avoid dismissal under Rule 12(b)(6), a complaint need not contain detailed
5  factual allegations; rather, the plaintiff must plead "enough facts to state a claim to relief
6  that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
7  "A claim has facial plausibility when the plaintiff pleads factual content that allows the
8  court to draw the reasonable inference that the defendant is liable for the misconduct
9  alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).
10 In other words, "the non-conclusory 'factual content,' and reasonable inferences from that
11 content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v.
12 U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). "Where
13 a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops
14 short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting
15 *Twombly*, 550 U.S. at 557).

16       When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend
17 even if no request to amend the pleading was made, unless it determines that the pleading
18 could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N.
19 Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.   DISCUSSION

21       Defendants argue Plaintiff's claims under the Fourteenth Amendment and *Bivens v.
22 Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) should be
23 dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will consider
24 each claim in turn.

25 **A. Fourteenth Amendment**

26       Defendants argue Plaintiff's Fourteenth Amendment claim should be dismissed
27 because the Fourteenth Amendment does not apply to federal government actors. (MTD
28 at 15–16.) Plaintiff argues "if the Defendants were not acting in an official capacity as

claimed in the motion to dismiss; then they are not federal agents." (Opp. at 7 (internal quotation marks omitted).)

Contrary to Plaintiff's argument, all Defendants admit they were federal employees acting in their official capacities as United States Probation Officers at the time the events in this case took place. (MTD at 11–12.) Accordingly, Plaintiff's Fourteenth Amendment claim against each Defendant fails as a matter of law. "[T]he Fourteenth Amendment has only limited applicability; the commands of the Fourteenth Amendment are addressed only to the State or to those acting un[d]er color of its authority." *D.C. v. Carter*, 409 U.S. 418, 423 (1973). Accordingly, "actions of the Federal Government and its officers are beyond the purview of the Amendment." *Id*. at 424; *see also Hall v. Mueller*, 84 F. App'x 814, 815 (9th Cir. 2003) (affirming dismissal of Fourteenth Amendment claims against federal government actors).

Because Plaintiff has alleged violations against only federal actors, any amendment of Plaintiff's Fourteenth Amendment claim would be futile. Accordingly, Plaintiff's Fourteenth Amendment claim against all Defendants is **DISMISSED WITH PREJUDICE**.

### B. *Bivens* Claim

Defendants have also moved to dismiss Plaintiff's claim for damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (MTD at 7–11.)

In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Id*. at 70. However, a *Bivens* claim may proceed only in limited circumstances. In *Bivens*, the Supreme Court "held that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court." *Id*. at 66. Since that time, the Supreme Court has implied a *Bivens* cause of action in only two other

instances. *See Davis v. Passman*, 442 U.S. 228 (1979) (implying a right of action under the Due Process Clause of the Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (implying a right of action under the Cruel and Unusual Punishments Clause of the Eighth Amendment). The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 198 L. Ed. 2d 290, 137 S. Ct. 1843, 1857 (2017) (quoting *Iqbal*, 556 U.S. at 675).

Plaintiff asserts a *Bivens* claim against Defendants Manzano, Valenzuela, and Marco in both their "official and personal capacities." (Compl. at 3–4.) "A *Bivens* suit may be brought against a government official in her individual capacity, but not in her official capacity because such a suit 'would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1127 (9th Cir. 2019) (quoting *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007)). Accordingly, Plaintiff's *Bivens* claim against Defendants Manzano, Valenzuela, and Marco in their official capacities fails as a matter of law and is dismissed with prejudice.

The Court will next consider whether Plaintiff may maintain a *Bivens* claim against Defendants Manzano, Valenzuela, and Marco in their individual capacities. The Supreme Court has laid out a two-step inquiry when evaluating a litigant's request to expand *Bivens*. *Hernandez v. Mesa*, 206 L. Ed. 2d 29, 140 S. Ct. 735, 743 (2020). "We first inquire whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Id*. (quoting *Malesko*, 534 U.S. at 68). The term "new context" is interpreted broadly: the Supreme Court "regard[s] a context as 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by this Court.'" *Id*. (quoting *Abbasi*, 137 S. Ct. at 1859.). If the court finds that the *Bivens* claim arises in a new context, then the court proceeds to the second step of the analysis, which "ask[s] whether there are any 'special factors [that] counse[l] hesitation' about granting the extension," *id*. (quoting *Abbasi*, 137 S. Ct. at 1857) (internal quotation marks omitted), such as "the absence of

affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1848 (quoting *Carlson*, 446 U.S. at 19). "[S]eparation-of-powers principles should be central to the analysis." *Id*. "[I]f we have reason to pause before applying *Bivens* in a new context or to a new class of defendants[,] we reject the request." *Hernandez*, 140 S. Ct. at 743.

Here, Plaintiff's claim clearly arises in a new *Bivens* context. Although *Bivens* implied a damages remedy under the Fourth Amendment, the Supreme Court has made clear that *Bivens* does not extend to all Fourth Amendment claims. *See id*. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."). Additionally, this case differs from *Bivens* in meaningful ways. In *Bivens*, the Supreme Court held the plaintiff had an implied cause of action to compensate him for damages he incurred after agents from the Federal Bureau of Narcotics entered plaintiff's apartment and performed a warrantless search, arrested plaintiff for alleged narcotics violations, "manacled petitioner in front of his wife and children, and threatened to arrest the entire family." *Bivens*, 403 U.S. at 389, 396–97. Here, Plaintiff has made no claim of excessive force or unconstitutional arrest, nor has Plaintiff alleged any Defendant performed an unconstitutional search of Plaintiff's home or person. Instead, Plaintiff alleges Defendants' request for information about where Plaintiff's firearms would be stored violated Plaintiff's Fourth Amendment rights. (*See* Compl. at 5–8.) Plaintiff admits in his Complaint, however, that he voluntarily provided information about the storage facility where his firearms would be kept to Defendant Manzano, and concedes that he was never required to provide "the names and addresses of law enforcement personnel who agreed to store the firearms for the Plaintiff." (*Id*. at 6–7.)[2] Defendants requested information about Plaintiff's firearms in their capacities as federal probation officers tasked with overseeing Richard Parker's five-year period of supervised release. (*See id*. at 5–6.)

---

[2] Plaintiff concedes he voluntarily provided the storage facility contract to Defendant Manzano but argues he did so "under duress." (Compl. at 6.)

Because Plaintiff asserts a claim that arises in a new *Bivens* context, the Court "must proceed to the next step and ask whether there are factors that counsel hesitation." *Hernandez*, 140 S. Ct. at 744. Although the Supreme Court "has not defined the phrase 'special factors counselling hesitation,' . . . the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857–58. In light of the facts alleged in Plaintiff's Complaint, the Court does not find it appropriate to infer a *Bivens* remedy here. Plaintiff's chief complaint is with the United States Probation Office's policy of requiring information about where firearms are located before a federal prisoner begins a period of supervised release. (*See generally* Compl.) However, "a *Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860 (quoting for *Malesko*, 534 U.S. at 74).

The Supreme Court has counseled against expanding *Bivens* in situations which risk imposing a "burden and demand" on federal officials which "might well prevent them—or, to be more precise, future officials like them—from devoting the time and effort required for the proper discharge of their duties." *Id*. (citation omitted). Here, Defendants were tasked with monitoring Richard Parker's supervised release from federal prison. After Plaintiff noted his intention to house his father during Richard Parker's supervised release, Defendants inquired about firearms in Plaintiff's home. (*See* Compl. at 5–8.) As Defendants argue in their Motion, if the Court expanded *Bivens* to a circumstance like this one, "Probation Officers—unable to ask questions about potential safety concerns before federal prisoners are integrated back into the general public—would be faced with an enormous burden when tasked with assessing whether a home is an appropriate, safe residence for these individuals to live." (MTD at 10.) Where, as here, the "impact on governmental operations systemwide" would be great if the Court were to imply a *Bivens* remedy, "[t]hese and other considerations may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case." *Abbasi*, 137 S. Ct. at 1858.

Accordingly, the Court declines to imply a *Bivens* remedy against Defendants.

8

Because Plaintiff's *Bivens* claim is foreclosed as a matter of law and further amendment would be futile, the Court **DISMISSES** Plaintiff's *Bivens* claim **WITH PREJUDICE**.

### IV.   LEAVE TO AMEND

In his Complaint, Plaintiff requests leave to amend his Complaint "in regards to any legal defects prior to commencement of trial." (Compl. at 9.) Defendants argue Plaintiff's Complaint should be dismissed with prejudice. (MTD at 5.)

In the Ninth Circuit, filings made by pro se litigants must be construed liberally. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). While the Court holds today that Plaintiff's Fourteenth Amendment and *Bivens* claims are foreclosed as a matter of law and are dismissed with prejudice, the Court declines at this stage of proceedings to find that amendment of the Complaint and assertion of different claims would be futile. *See Ferren v. U.S. Dep't of the Interior*, 51 F. App'x 270 (9th Cir. 2002); *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

### V.   CONCLUSION

For the reasons discussed above, Defendants' Motion (Doc. 14) is **GRANTED.** Because amendment of Plaintiff's Fourteenth and *Bivens* claims would be futile, those claims are **DISMISSED WITH PREJUDICE**.

Plaintiff may file an amended complaint on or before **March 20, 2023** which cures the deficiencies noted above. Plaintiff is specifically advised that his amended pleading may not allege Fourteenth or *Bivens* claims against Defendants. Conclusory allegations unsupported by specific allegations of fact are insufficient to properly comply with the Federal Rules of Civil Procedure.

**If Plaintiff fails to file an amended complaint on or before March 20, 2023, the Court will enter a final order dismissing this civil action**. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("[i]f a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action").

///

**IT IS SO ORDERED**.

DATE:  February 16, 2023

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE