1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

DEREK RICHARD PARKER,

Plaintiff,

v.

MIMI MANZANO, et al.,

Defendants.

Case No.:  3:22-cv-00001-RBM-SBC

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**[Docs. 35, 42]**

Presently before the Court is Defendants Mimi Manzano, Christopher J. Marco, and Ymelda Valenzuela's (collectively, "Defendants") Motion to Dismiss ("Motion") Plaintiff's Amended Complaint for Damages ("Amended Complaint").   (Doc. 35.) Plaintiff Derek Richard Parker ("Plaintiff"), appearing pro se, filed an Opposition to the Motion (Doc. 37), and Defendants filed a Reply (Doc. 39).  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).   (Doc. 41.)   For the reasons discussed below, Defendants' Motion is **GRANTED**.

///

///

///

1

# I.   BACKGROUND

## A.   Procedural Background

The Court dismissed Plaintiff's initial Complaint, which alleged violation of his rights under the Fourth and Fourteenth Amendment by Defendants and sought a remedy under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  (Doc. 23 (Order dismissing initial Complaint); Compl. at 1.[1])  The Court dismissed Plaintiff's Fourteenth Amendment claim with prejudice because Plaintiff alleged only violations against federal actors.  (Doc. 23 at 4–5.)[2]  Plaintiff's Fourth Amendment *Bivens* claim against Defendants in their official capacities was dismissed with prejudice as barred by sovereign immunity.  (*Id.* at 6.)  Plaintiff's Fourth Amendment *Bivens* claim against Defendants in their personal capacities was dismissed with prejudice because it arose in a new *Bivens* context and special factors counseled hesitation in extending *Bivens* to that new context.  (*Id.* at 5–9.)  Despite dismissing Plaintiff's claims with prejudice because Plaintiff's Fourteenth Amendment and *Bivens* claims were foreclosed as a matter of law, the Court granted Plaintiff leave to amend because he is proceeding pro se.  (*Id.* at 9.)  However, the Court explicitly stated, "Plaintiff is specifically advised that his amended pleading may not allege Fourteenth or *Bivens* claims against Defendants" and that "conclusory allegations unsupported by specific allegations of fact are insufficient to properly comply with the Federal Rules of Civil Procedure."  (*Id.*)

After the Court granted Plaintiff's request for an extension of time to file an amended complaint (Docs. 32–33), Plaintiff filed his Amended Complaint.  (Doc. 34.)

## B.   Allegations of the Amended Complaint

For purposes of ruling on the instant Motion, the Court assumes the following facts alleged in the Amended Complaint are true.

///

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.

[2] Plaintiff's Amended Complaint indicates inclusion of the Fourteenth Amendment claim was an error and the issue is abandoned.  (Am. Compl. at 5.)

"On May 21, 2020, Plaintiff was informed that his father, Richard Wayne Parker, …  was given 'immediate release' from his four life sentences after serving 22 years in federal prison." (Am. Compl. at 5.)  Plaintiff wanted to have Parker live with him in Oceanside while he served his five years of supervised release. (*Id.*)  A probation officer from Orange County contacted Plaintiff and "noted the highly secured location for the firearms, …[a] secured combination lock gun safe, in a locked closet/gun room, in a locked home office was adequate for US Probation." (*Id.*)

"Almost immediately after this approval, the US Probation Office for the Southern District took the case and Defendant Manzano became the case agent." (*Id.*) "Manzano quickly reversed approval for the weapons to be secured in the home." (*Id.* at 6.)  Plaintiff informed Manzano that he "would move the subject firearms to secure gun safes in the homes of law enforcement who were his long-time friends" and "[t]his would negate any concerns for US Probation since the residence of the person on supervised release is by law their only area of responsibility." (*Id.*)  Manzano indicated Plaintiff would be required to provide the names and addresses of those safeguarding his firearms. (*Id.*)  Plaintiff emailed Manzano asking for the regulations that gave her authority to require this information "on persons unrelated to his father's supervision." (*Id.*)

"Manzano refused to provide a copy of the regulations; nor would she give the citation and statute numbers of the fictional regulations." (*Id.*) "Manzano informed the Plaintiff that her supervisor would speak to him by phone on the matter, [and] Supervisor … Valenzuela … left a voicemail." (*Id.*)  Plaintiff asserts that not receiving a written response "is by federal definition 'consciousness of guilt' … evidenced that they knew they were committing misconduct and sought to prevent giving written evidence of that misconduct." (*Id.* at 6; *see also id.* at 4 ("Defendant refused all attempts to communicate in writing via email which indicates consciousness of guilt.").)

"Plaintiff did not want to violate the trust of his friends and would not give a list of the proposed law enforcement officers; instead he told Manzano he would submit and place the firearms in storage." (*Id.* at 6–7.)  "Manzano stated this was acceptable only if he

3

provided a copy of the storage agreement to her." (*Id.* at 7.)  "Plaintiff emailed the storage contract to … Manzano."[3]  (*Id.*)  "Manzano coerced Plaintiff to disclose the complete lists of firearms owned by him and to disclose their physical locations with full knowledge that such information is protected by the Fourth Amendment of the Constitution and requires a search warrant supported by probable cause that a crime is being committed." (*Id.* at 3.) Plaintiff alleges that requiring him to provide the locations of his firearms is "quite probably a [f]ederal crime," and "[f]ederal agents cannot use coercion to force submission to non-existent federal law or procedure – in this case, denying Plaintiff's father's use of [Plaintiff's residence] if Plaintiff did not submit to unlawful coercion contrary to his Fourth Amendment Rights." (*Id.* at 8.)

"The firearms were later stolen in a burglary upon the storage locker." (*Id.* at 7.) Plaintiff alleges "[o]nly three persons knew the lockers' contents: Plaintiff, the storage facility manager, and Defendant Manzano." (*Id.*)  "The unit of the Plaintiff was the only one burglarized; only firearms were taken while over 1000 rounds of ammunition was left untouched, and the cameras had been conveniently out of position." (*Id.* (citing police case number).)  "[O]ne firearm is known to have been recovered – taken during a drug arrest." (*Id.* (citing a separate police case number).)  Plaintiff asserts "[f]irearms that were safely and lawfully secured are now at large among the criminal community due to the unlawful coercion of the Defendants and Defendant Manzano's fixation with the lawfully owned firearms." (*Id.*)  "Had Defendants not coerced the Plaintiff and prevented placement with law enforcement officers, these firearms would not be at large and in the hands of criminals." (*Id.* at 9.)

///

---

[3] Plaintiff asserts that "[t]his is verifiable in Probation Records."  (Am. Compl. at 7.) Defendants have provided the storage agreement that Plaintiff relies on in the Amended Complaint as an exhibit to their Motion (Doc. 35-2) with a Declaration indicating the storage contract provided by Plaintiff to Defendants redacted the unit number at the storage facility.  (Decl. of Stephanie Sotomayer [Doc. 35-1] ("Sotomayer Decl.") ¶ 2.)

Plaintiff argues that "[o]nce Plaintiff stated that the firearms would be removed from [his residence] and he offered US Probation the opportunity to fully search and inspect, there was no need to continue to fixate on the firearms locations." (*Id.* at 8.) Manzano "declined an offer to search the residence to document the firearms were not present." (*Id.* at 3.) The Amended Complaint alleges Valenzuela joined Manzano in requiring the list of firearms and location and in refusing to provide written regulations permitting the conduct. (*Id.* at 3–4.) As to Marco, Plaintiff alleges "he attempted to conceal the Freedom of Information Act requests for the non-existent policies and procedures cited to obtain the descriptions and locations of the Plaintiff's firearms in violation of his Fourth Amendment rights." (*Id.* at 4.)[4]

Plaintiff argues "that using coercion to force a citizen to unwillingly provide specific location information details about his private property is a search, no different than a physical search." (*Id.* at 9.) He alleges that "using coercion and false regulations to obtain knowledge about personal private property is an unlawful search." (*Id.*) Plaintiff asserts claims against each Defendant in both their "personal and professional capacities." (*Id.* at 3–4.) Plaintiff seeks $150,000 in monetary compensation from each Defendant in their official capacity, $150,000 in monetary compensation from each Defendant in their personal capacity, punitive damages, and compensation for all costs of this action. (*Id.* at 9–10.)

---

[4] Plaintiff states he brought a prior action alleging violations under the Freedom of Information Act that was dismissed. (Am. Compl. at 2 (identifying *Parker v. United States Probation Office et al.*, Case No. 3:21-cv-01373-DMS-DEB (S.D. Cal. 2021)). The earlier case was dismissed without leave to amend. *Parker v. United States Probation Office*, Case No. 3:21-cv-1373, 2021 WL 5163316, at *1 (S.D. Cal. Nov. 5, 2021). In addition to finding amendment of FOIA claims would be futile because the defendants were exempt from FOIA, the court also explained that amending the complaint to add a civil rights claim against federal employees would also be futile because the facts alleged did not implicate any of the three existing *Bivens* contexts and "that 'expanding the *Bivens* remedy is now a 'disfavored' judicial activity.'" *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556–57).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

## III.    DISCUSSION

In his Amended Complaint and in his Opposition, Plaintiff still alleges and argues a violation of the Fourth Amendment based on an unreasonable search, a claim the Court already dismissed.  (Doc. 23.)  He continues to claim that for his father to live in his home while under supervision by federal probation for the five years following his father's

release from federal prison, the Defendants coerced him into disclosing the location of the firearms and providing documentation of the location by submitting the storage agreement for the location.  (Am. Compl. at 4–8; Doc. 37 at 3–4.)  He asserts this is an unlawful search without probable cause under the Fourth Amendment.  (Am. Compl. at 3–4, 8–9; Doc. 37 at 4–5.)

Setting aside whether these allegations plausibly allege an unreasonable search under the Fourth Amendment, Plaintiff cannot state a Fourth Amendment claim against federal employees based on these allegations.  The only avenue available for an alleged Fourth Amendment violation by a federal employee is under *Bivens*, and, as the Court explained in its previous order, allowing a claim under *Bivens* based on these allegations would impermissibly extend *Bivens* into a new context when special factors counsel against doing so.  (Doc. 23 at 6–9.)

### A.      No Fourth Amendment Claim

A Fourth Amendment claim against the federal Defendants in their personal capacities for an unreasonable search cannot proceed without an extension of *Bivens*, and an extension of *Bivens* is not permissible here.

### 1.      No Fourth Amendment Claim Against Federal Defendants Without *Bivens*

Plaintiff has removed the word "*Bivens*" from his Amended Complaint, however he is still attempting to assert a violation of his constitutional rights under the Fourth Amendment against federal employees based on an unreasonable search.  Plaintiff has not and cannot state a damages claim for a Fourth Amendment violation against these federal employees on this basis.

There is no direct claim under the Fourth Amendment for constitutional violations by federal employees.  *See Pettibone v. Russell*, 59 F.4th 449, 454 (9th Cir. 2023) (noting that Congress "has not created a general cause of action to redress violations of the Constitution by federal officers."); *see Ziglar*, 582 U.S. at 130 ("[I]n the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose

7

constitutional rights were violated by agents of the Federal Government."); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) ("In 30 years of *Bivens* jurisprudence we have extended its holding only twice, to provide *an otherwise nonexistent cause of action* against individual officers alleged to have acted unconstitutionally.") (emphasis added).   As numerous courts have explained, while 42 U.S.C. § 1983 permits a claim for damages "if a *state* official violates his or her constitutional rights ... Congress did not create an analogous statute for *federal* officials."  *Ziglar*, 582 U.S. at 130 (emphasis added); *Harper v. Nedd*, 71 F.4th 1181, 1184–85 (9th Cir. 2023) ("Under 42 U.S.C. § 1983, plaintiffs may sue state officials acting under the color of state law for money damages for violating the constitution.   No federal statute, however, extends a cause of action against *federal* officials.") (emphasis added).

Bivens allowed a claim to "enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar*, 582 U.S. at 131 (citing *Bivens*, 403 U.S. at 397).   However, as the Court explained in its previous Order and reiterates below, "[t]he Supreme Court 'has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity,'" (Doc. 23 at 6 (quoting *Ziglar*, 582 U.S. at 135)), and "Plaintiff's *Bivens* claim is foreclosed as a matter of law." (*Id.* at 9.)

### 2.    No Extension of *Bivens*

Given the Court has previously dismissed Plaintiff's Fourth Amendment *Bivens* claim, the Court will not repeat the entirety of its prior analysis on this issue.  (Doc. 23 at 5–9.)  However, the Court reiterates a number of points.

"Following *Bivens*, the [Supreme] Court recognized just two other types of implied damages claims under the Constitution," implying a right of action under the Due Process Clause of the Fifth Amendment for gender-based discrimination and implying a right of action under the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Harper*, 71 F.4th at 1185 (citing *Davis v. Passman*, 442 U.S. 228, 248–49 (1979) and *Carlson v. Green*, 446 U.S. 14, 16 n.1 (1980)).  "The Supreme Court has never recognized

8

another *Bivens* claim in the last 43 years" and "has consistently refused to extend *Bivens* in the twelve times the issue has come before it." *Id.*

The Supreme Court has laid out a two-step inquiry when evaluating a litigant's request to expand *Bivens*. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). "We first inquire whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Id.* (quoting *Malesko*, 534 U.S. at 68). A context is "'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court.'" *Id.* (quoting *Ziglar*, 582 U.S. at 139). If the court finds that the *Bivens* claim arises in a new context, then the court proceeds to the second step, which "ask[s] whether there are any 'special factors [that] counse[l] hesitation' about granting the extension," *id.* (quoting *Ziglar*, 582 U.S. at 136) (internal quotation marks omitted), such as "the absence of affirmative action by Congress." *Ziglar*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S. at 18). "[I]f we have reason to pause before applying *Bivens* in a new context or to a new class of defendants[,] we reject the request." *Hernandez*, 140 S. Ct. at 743.

Here, Plaintiff's claim arises in a new *Bivens* context. Plaintiff appears to acknowledge this in his Opposition, stating "[t]his is definitely a new situational presentation of a Fourth Amendment violation," although he goes on to argue "it does not make the presentation incorrect." (Doc. 37 at 5.)

Although *Bivens* implied a damages remedy under the Fourth Amendment, the Supreme Court has made clear that *Bivens* does not extend to all Fourth Amendment claims. *Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."). Additionally, this case differs from *Bivens* in meaningful ways. In *Bivens*, the Supreme Court held the plaintiff had an implied cause of action to compensate him for damages he incurred after agents from the Federal Bureau of Narcotics entered plaintiff's apartment, performed a warrantless search, arrested plaintiff for alleged narcotics violations, "manacled petitioner in front of his wife and children, and threatened

9

to arrest the entire family." *Bivens*, 403 U.S. at 389, 396–97.  Here, unlike *Bivens*, Plaintiff does not claim the use of excessive force or an unconstitutional arrest, nor has Plaintiff alleged that any Defendant performed an unconstitutional search of Plaintiff's person or home.  Instead, Plaintiff alleges that for his father to be able to live in his home while under supervision by federal probation, Defendants required him to provide documentation regarding where his firearms would be stored outside of the home.  (Am. Compl. at 5–7.) Defendants required this even though Plaintiff preferred and offered to allow them to search his home.  (*Id.* at 3, 8.)  Additionally, Plaintiff alleges Defendants did not provide him with the policies or regulations supporting this requirement when he requested them. (Am. Compl. 4, 6, 8.)  Even though he brings them under the Fourth Amendment, these allegations present a very different context than *Bivens*.

Turning to the second step of the inquiry, the Court also finds "there are factors that counsel hesitation" here.  *Hernandez*, 140 S. Ct. at 744 (when the claim asserted "arise[s] in a new context, we must proceed to the next step and ask whether there are factors that counsel hesitation.")  As the Court explained in dismissing Plaintiff's initial Complaint, "the Supreme Court has counseled against expanding *Bivens* in situations which risk imposing a 'burden and demand' on federal officials which 'might well prevent them—or, to be more precise, future officials like them—from devoting the time and effort required for the proper discharge of their duties.'"  (Doc. 23 at 8 (quoting *Ziglar*, 582 U.S. at 141).)

Here, Defendants were tasked with monitoring Plaintiff's father's supervised release following his release from federal prison.  (Am. Compl. at 5–6.)  Plaintiff's own allegations illustrate the burden and demand added if a claim like this is recognized.  Instead of federal probation officers determining what is required for a home to be safe and secure for an individual on federal supervision through inquiry and documentation, Plaintiff asserts that they should not have required the documentation for his father to live there and should have instead searched his home.  Based on Plaintiff's claim, not only would Defendants be tasked with assessing whether a home is safe for an individual on federal supervision, but they would be required to do so on the terms demanded by the home owner.  Where, as

10

here, the "impact on governmental operations systemwide" would be great if the Court were to imply a *Bivens* remedy, "[t]hese and other considerations may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case." *Ziglar*, 582 U.S. at 136–37; *see also Harper*, 71 F.4th at 1185–86 (explaining that "[i]f there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate,' or 'even if there is the *potential* for such consequences, a court cannot afford a plaintiff a *Bivens* remedy.") (quoting *Egbert v. Boule*, 596 U.S. 482, 496 (2022).

Additionally, as the Court previously explained, "a *Bivens* action is not a proper vehicle for altering an entity's policy," *Ziglar*, 582 U.S. at 140 (quotations and citations omitted), and Plaintiff's Amended Complaint challenges the way Defendants document that firearms have been removed from a residence housing a person on federal supervision. Given numerous factors counsel hesitation in extending *Bivens* to Plaintiff's claim, the Court finds Plaintiff's Fourth Amendment claim is foreclosed as a matter of law and further amendment would be futile.  Plaintiff's claim is **DISMISSED**.

### B.   No Official-Capacity Claims Against Federal Defendants

Defendants also seek dismissal of Plaintiff's Fourth Amendment claim against Defendants in their official capacities because Plaintiff has not identified any waiver of sovereign immunity. (Doc. 35 at 8–9.)

Even assuming Plaintiff could state a *Bivens* claim, it could not be brought against a government official in their individual capacity "because such a suit would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity."  (Doc. 23 at 6 (citing *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1127 (9th Cir. 2009).)  As alleged in the Amended Complaint, Defendants are federal probation officers.  Plaintiff cannot bring a claim against these defendants in their official capacities because the United States has not waived sovereign immunity for constitutional claims.  Plaintiff's claim against the Defendants in their official capacities is **DISMISSED**.

11

**C.     Leave to Amend**

Despite dismissing the claims of Plaintiff's initial Complaint with prejudice, the Court granted Plaintiff leave to amend given his pro se status.  (Doc. 23 at 9.)  Defendants seek dismissal of the Amended Complaint with prejudice and without leave to amend because the defects in the Amended Complaint cannot be cured.[5]  (Doc. 35 at 5.)

When determining whether to grant leave to amend, courts generally consider five factors, known as the *Foman* factors as stated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962).  These factors include: (1) undue delay; (2) bad faith on the part of the party seeking leave to amend; (3) undue prejudice to the non-moving party; (4) futility of amendment; and (5) whether the plaintiff has previously amended the complaint. *Id*.

First, the Court finds amendment would be futile.  Plaintiff's claim is clearly based on the theory that requiring him to provide documentation where his firearms have been relocated without providing the policy or regulation authorizing that documentation, is an unreasonable search under the Fourth Amendment.  However, as the Court has explained, he cannot succeed against the Defendants, federal employees, on this claim.  Additional facts will not cure the deficiency of Plaintiff's Fourth Amendment claim.  *See Sanchez v. L.A. Dep't of Transp.*, 39 F.4th 548, 562 (9th Cir. 2022) (affirming dismissal without leave to amend when "no additional facts could possibly have cured the deficiency with his constitutional claims.").  The futility of amendment alone warrants dismissal without leave to amend.  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion to amend.").

Plaintiff's prior opportunity to amend also weighs against granting Plaintiff leave to amend.  The Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobile Oil Co.*, 866 F.2d

---

[5] Defendants additionally seek dismissal based on qualified immunity.  (Doc. 35 at 14–18.)  However, given the Court finds Plaintiff's claim cannot proceed, the Court need not reach this additional basis for dismissing Plaintiff's claim.

1149, 1160 (9th Cir. 1989).  Plaintiff seeks "leave to amend this complaint to remedy defects prior to trial" in his Amended Complaint and asserts that "[d]ismissal of this case without a full round of discovery will give clear evidence that the Defendant's misconduct is known to be a fact and that a protective position by the Court is in play." (Doc. 34 at 10; Doc. 37 at 6.)  However, Plaintiff has had an opportunity to amend his claim and made only minimal changes in the allegations and asserted the same claim, a Fourth Amendment claim.  While he removed the word "*Bivens*" from his Amended Complaint, his factual allegations and legal claim based on an unreasonable search under the Fourth Amendment remain the same.  The Court also finds Plaintiff's reference to the Privacy Act of 1974 in his Opposition does not warrant granting leave to amend again.  Plaintiff does not state a Privacy Act claim in the Amended Complaint or the Opposition, which is itself not a permissible way to amend a pleading.  Additionally, Defendants accurately explain in their Reply that they, as individual defendants, are not proper defendants for a Privacy Act claim. (Doc. 39 at 6 ("Under the Privacy Act, the only proper defendant is a federal agency.") (citing 5 U.S.C. § 552a(g)(1)).

As to Plaintiff's arguments regarding discovery, "pleading standards must be met before 'unlocking the doors of discovery.'"  *Estate of Strickland v. Nevada County*, 69 F.4th 614, 623 (9th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678–79).  As discussed above and in the Court's prior Order, the only way this claim can proceed against federal employees is under *Bivens* and extending *Bivens* to this claim is not permissible.  Plaintiff is not entitled to discovery when he cannot state a claim.  *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) ("We cannot condone the use of discovery to engage in 'fishing expeditions' when there is no basis for a claim).

Finally, because further amendment would be futile, this case is **DISMISSED with prejudice**.  *Id.* (dismissal with prejudice proper when is it clear "that the complaint could not be saved by amendment").

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.   CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (Doc. 35) is **GRANTED.**   Plaintiff's case is **DISMISSED with prejudice and without leave to amend**.  Plaintiff's Request for a Ruling (Doc. 42), filed after briefing on this Motion was complete, is **DENIED as moot**.

**IT IS SO ORDERED**.

Dated:  March 4, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

14